STUART J. PURDY, CA Bar No. 239878
**SIMON GREENSTONE PANATIER, PC**
3760 Kilroy Airport Way, Suite 680
Long Beach, California 90806
Telephone (562) 590-3400
Facsimile (562) 590-3412
Email: spurdy@sgptrial.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KENNETH KRANZ** and **LUCINDA KRANZ**, | Case No. '22CV588 L KSC |
| Plaintiffs, | **ORIGINAL COMPLAINT** |
| vs. | |
| **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-by-merger to BUFFALO PUMPS, INC.); | **Jury Trial Demanded** |
| **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY); | |
| **ARMSTRONG INTERNATIONAL, INC.**; | |
| **BLACKMER PUMP COMPANY**; | |
| **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-interest to THE COOPER-BESSEMER | |

CORPORATION);                                    )
                                                 )
**CLA-VAL CO.**;                                 )
                                                 )
**CRANE CO.**;                                   )
                                                 )
**ELLIOTT COMPANY** f/k/a and d/b/a              )
ELLIOTT TURBOMACHINERY                           )
COMPANY;                                         )
                                                 )
**FLOWSERVE US, INC.** (sued as                  )
successor to EDWARD VALVE, INC.);                )
                                                 )
**FMC CORPORATION** (sued individually           )
and as successor-in-interest to                  )
NORTHERN PUMP COMPANY f/k/a                       )
NORTHERN FIRE APPARATUS                          )
COMPANY);                                        )
                                                 )
**GARDNER DENVER, INC.**;                        )
                                                 )
**GENERAL ELECTRIC COMPANY**;                    )
                                                 )
**THE GOODYEAR TIRE & RUBBER**                   )
**COMPANY**;                                     )
                                                 )
**HOPEMAN BROTHERS INC.**;                       )
                                                 )
**HUNTINGTON INGALLS**                           )
**INDUSTRIES, INC.** f/k/a NORTHROP              )
GRUMMAN SHIP SYSTEMS (sued                       )
individually and as successor-in-interest to     )
NEWPORT NEWS SHIPBUILDING AND                    )
DRY DOCK COMPANY);                               )
                                                 )
**HUNTINGTON INGALLS**                           )
**INCORPORATED** f/k/a NORTHROP                  )
GRUMMAN SHIP SYSTEMS (sued                       )
individually and as successor-in-interest to     )
NEWPORT NEWS SHIPBUILDING                        )
                                                 )
AND DRY DOCK COMPANY);                           )

1

2   **IMO INDUSTRIES, INC.** (sued )

3   individually and as successor-in-interest to )
    DELAVAL TURBINE, INC. and C.H. )

4   WHEELER MANUFACTURING )
    COMPANY); )

5       )

6   **JOHN CRANE, INC.**; )
        )

7   **J.T. THORPE & SON, INC.**; )

8       )
    **METROPOLITAN LIFE INSURANCE** )

9   **COMPANY**; )

10      )

11  **PARAMOUNT GLOBAL** f/k/a )
    VIACOMCBS INC. f/k/a CBS )

12  CORPORATION (a Delaware Corporation) )
    f/k/a VIACOM, INC. successor-by-merger )

13  to CBS CORPORATION (a Pennsylvania )
    Corporation) f/k/a WESTINGHOUSE )

14  ELECTRIC CORPORATION and as )

15  successor-in-interest to BF )
    STURTEVANT); )

16      )

17  **SUPERIOR-LIDGERWOOD-MUNDY** )

18  **CORPORATION** (sued individually and )
    as successor-in-interest to M.T. )

19  DAVIDSON COMPANY); )

20      )

21  **SYD CARPENTER, MARINE** )
    **CONTRACTOR, INC.**; )

22      )

23  **TACO, INC.**; )

24  **UNION CARBIDE CORPORATION**; )

25      )
    **UNISYS CORPORATION** (sued )

26  individually and as successor-in-interest to )
    WATERBURY TOOL COMPANY); )

27      )

28  **VELAN VALVE CORP.** a/k/a VELAN )
    VALVE CORPORATION; )

**VIAD CORP** f/k/a VIAD
CORPORATION f/k/a THE DIAL
CORPORATION (sued individually and as
successor-in-interest to GRISCOM-
RUSSELL COMPANY);

**WARREN PUMPS, LLC** (sued
individually and as successor-in-interest to
QUIMBY PUMP COMPANY);

**WEIR VALVES & CONTROLS USA,
INC.** f/k/a ATWOOD & MORRILL;

**THE WILLIAM POWELL COMPANY**;

and **DOES 1-450** INCLUSIVE,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

    Plaintiffs KENNETH KRANZ and LUCINDA KRANZ bring this action for damages against Defendants, demanding a trial by jury, and hereby make the following allegations:

## NATURE OF THE ACTION

    1.    Plaintiff KENNETH KRANZ suffers from mesothelioma, a form of cancer caused by exposure to asbestos. As a result of his diagnosis, he has suffered and will continue to suffer physical pain, emotional distress, loss of enjoyment of life, and loss of bodily functions. He has also incurred and will incur medical expenses, a loss of income and income potential, and other damages associated with the diagnosis, treatment and medical course of his disease. His spouse, Plaintiff LUCINDA KRANZ, has also suffered and will continue to suffer a loss of society and consortium together with related anguish and grief.

//

**JURISDICTION AND VENUE**

2.      This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §1332 because: (a) the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and (b) the matter is between citizens of different states.

3.      Venue is proper in the Southern District of California under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this case occurred within this District, and at least one defendant resides in this District.

**THE PARTIES**

4.      Plaintiffs KENNETH KRANZ and LUCINDA KRANZ are residents of the State of Texas.

5.      Upon information and belief and at all relevant times, the named Defendants designed, marketed, manufactured, distributed, supplied and/or sold raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products to which Plaintiff KENNETH KRANZ was exposed.   At all relevant times, each of the Defendants was the agent, servant, employee and/or joint venture of its Co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employee and/or joint venture.   For purposes of this Complaint, each Defendant hereinafter mentioned shall include the present business entity, as well as all of its predecessor and/or successor corporations and entities as applicable.   Upon information and belief, each Defendant (a) was and is an individual, corporation, partnership and/or unincorporated association organized and existing under and by virtue of the laws of the State of California or the laws of some other state or foreign jurisdiction to do business in the States of California; (b) in person or through an agent transacts business in the State of California; (c) regularly does and/or solicits business within the State of California; (d) derives substantial revenue from goods used or consumed in the State of California; and (e) expected or should have expected its acts to have consequences within the State

of California and derives substantial revenue from interstate and/or international commerce.

6. Defendant **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-by-merger to BUFFALO PUMPS, INC.) is a Pennsylvania corporation whose registered agent for service of process is Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110, and whose offices are located at 874 Oliver Street, North Tonawanda, NY 14120. Defendant **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-by-merger to BUFFALO PUMPS, INC.) is being sued for asbestos-containing Buffalo Pumps.

7. Defendant **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY) is a New Jersey corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 5400 International Trade Drive, Richmond, VA 23231. Defendant **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY) is being sued for asbestos-containing DeLaval Pumps and DeLaval Purifiers.

8. Defendant **ARMSTRONG INTERNATIONAL, INC.** is a Michigan corporation which may be served with process at its registered agent at its principal place of business, David Dykstra, 900 Maple Street, Three Rivers, MI 49093. Defendant **THE ARMSTRONG INTERNATIONAL, INC.** is being sued for asbestos-containing Armstrong Steam Traps and Armstrong Strainers.

9. Defendant **BLACKMER PUMP COMPANY** is a Michigan corporation which may be served with process at its principal place of business, 1809 Century Avenue SW, Grand Rapids, MI 49503-1530. Defendant **BLACKMER PUMP COMPANY** is being sued for asbestos-containing Blackmer Pumps.

10. Defendant **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-

interest to THE COOPER-BESSEMER CORPORATION) is a Delaware corporation which may be served with process at its registered agent in California, CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 1333 W. Loop South, Suite 1700, Houston, TX 77027. Defendant **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION) is being sued for asbestos-containing Cooper Bessemer Generators, Cooper Bessemer Diesel Engines, and Cooper Bessemer Oil Coolers.

11.     Defendant **CLA-VAL CO.** is a Washington corporation and may be served with process at its principal place of business, 1701 Placentia Avenue, Costa Mesa, CA 92627-4475. Defendant **CLA-VAL CO.** is being sued for asbestos-containing Cla-Val Valves.

12.     Defendant **CRANE CO.** is a Delaware corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 100 First Stamford Place, Stamford, CT 06902. Defendant **CRANE CO.** is being sued for asbestos-containing Cranite Gaskets, Cranite Packing, and Crane Valves.

13.     Defendant **ELLIOTT COMPANY** f/k/a and d/b/a ELLIOTT TURBOMACHINERY COMPANY is a Delaware corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 901 N. Fourth Street, Jeanette, PA 15644 and 10940 W. Sam Houston Parkway North, Suite 150, Houston, TX 77064-5768. Defendant **ELLIOTT COMPANY** f/k/a and d/b/a ELLIOTT TURBOMACHINERY COMPANY is being sued for asbestos-containing Elliott Deaerating Feed Systems and Elliott Condensers.

14.     Defendant **FLOWSERVE US, INC.** (sued as successor to EDWARD VALVE, INC.) is a Delaware corporation whose registered agent for service of process

is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 5215 North O'Connor Boulevard, Suite 2300, Irving, TX 75039.  Defendant **FLOWSERVE US, INC.** (sued as successor to EDWARD VALVE, INC.) is being sued for asbestos-containing Edward Valves.

15.    Defendant **FMC CORPORATION** (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) is a Delaware corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 2929 Walnut Street, Philadelphia, PA 19104. Defendant **FMC CORPORATION** (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) is being sued for asbestos-containing Northern Pumps.

16.    Defendant **GARDNER DENVER, INC.** is a Delaware corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 1800 Gardner Expressway, Quincy, IL 62305-9364. Defendant **GARDNER DENVER, INC.** is being sued for asbestos-containing Gardner Denver Pumps.

17.    Defendant **GENERAL ELECTRIC COMPANY** is a New York corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 5 Necco Street, Boston, MA 02210.  Defendant **GENERAL ELECTRIC COMPANY** is being sued for asbestos-containing General Electric Ships Service Generators.

18.    Defendant **THE GOODYEAR TIRE & RUBBER COMPANY** is an Ohio corporation whose registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833, and whose offices are located at 200 Innovation Way, Akron, OH 44316.  Defendant **THE GOODYEAR TIRE & RUBBER COMPANY** is being sued for asbestos-containing Cranite Gaskets and Cranite Packing.

19.     Defendant **HOPEMAN BROTHERS INC.** is an Virginia corporation whose registered agent for service of process is CT Corporation Service, 4701 Cox Road, Suite 285, Glen Allen, VA 23060, and whose offices are located at 435 Essex Ave, Suite 101, Waynesboro, VA 22980.   Defendant **HOPEMAN BROTHERS INC.** is being sued as a supplier of asbestos-containing Marinite Board and Micarta Board.

20.     Defendant **HUNTINGTON INGALLS INDUSTRIES, INC.** f/k/a NORTHROP GRUMMAN SHIP SYSTEMS (sued individually and as successor-in-interest to NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY) is a Delaware corporation whose registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, and whose offices are located at 4101 Washington Avenue, Newport News, VA 23607.   Defendant **HUNTINGTON INGALLS INDUSTRIES, INC.** f/k/a NORTHROP GRUMMAN SHIP SYSTEMS (sued individually and as successor-in-interest to NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY) is being sued for asbestos-containing Newport News Shipbuilding Condensers.

21.     Defendant **HUNTINGTON INGALLS INCORPORATED** f/k/a NORTHROP GRUMMAN SHIP SYSTEMS (sued individually and as successor-in-interest to NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY) is a Virginia corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 4101 Washington Avenue, Newport News, VA 23607.   Defendant **HUNTINGTON INGALLS INCORPORATED** f/k/a NORTHROP GRUMMAN SHIP SYSTEMS (sued individually and as successor-in-interest to NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY) is being sued for asbestos-containing Newport News Shipbuilding Condensers.

22.     Defendant **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and C.H. WHEELER MANUFACTURING COMPANY) is a Delaware corporation whose registered agent

for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 1710 Airport Road, Monroe, NC 28110 and 3525 Quaker Bridge Road, Suite 912, Hamilton, NJ 08619.  Defendant **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and C.H. WHEELER MANUFACTURING COMPANY) is being sued for asbestos-containing DeLaval Pumps, DeLaval Purifiers, C.H. Wheeler Tank Ejectors, and C.H. Wheeler Air Ejectors.

23. Defendant **JOHN CRANE, INC.** is a Delaware corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 6400 W. Oakton Street, Morton Grove, IL 60053-2725.  Defendant **JOHN CRANE, INC.** is being sued for asbestos-containing John Crane Gaskets and John Crane Packing.

24. Defendant **J.T. THORPE & SON, INC.** is a California corporation whose registered agent for service of process and offices are located at 1060 Hensley Street, Richmond, CA 94801.  Defendant **J.T. THORPE & SON, INC.** is being sued as a Contractor Defendant and supplier of asbestos-containing insulation products.

25. Defendant **METROPOLITAN LIFE INSURANCE COMPANY** is a New York corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 200 Park Avenue, New York, NY 10166.  Defendant **METROPOLITAN LIFE INSURANCE COMPANY** is being sued for Conspiracy.

26. Defendant **PARAMOUNT GLOBAL** f/k/a VIACOMCBS INC. f/k/a CBS CORPORATION) f/k/a VIACOM, INC. successor-by-merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION and as successor-in-interest to BF STURTEVANT) is a Delaware corporation whose registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833, and whose offices are located at 1515 Broadway, New York, NY 10036. Defendant **PARAMOUNT GLOBAL** fa Pennsylvania Corporation) f/k/a

WESTINGHOUSE ELECTRIC CORPORATION and as successor-in-interest to BF STURTEVANT) is being sued for asbestos-containing Westinghouse Pumps, Westinghouse Valves, Westinghouse Turbines, Westinghouse Generators, Westinghouse Ships Service Generators, Westinghouse Reduction Gears, Westinghouse Air Ejectors, Westinghouse Condensers, Westinghouse Coolers, BF Sturtevant Pumps, BF Sturtevant Turbines, and BF Sturtevant Forced Draft Blowers.

27.    Defendant **SUPERIOR-LIDGERWOOD-MUNDY CORPORATION** is a Wisconsin corporation whose registered agent for service of process, Arthur R. Woodman, and offices are located at 302 Grand Avenue, Superior, WI 54880. Defendant **SUPERIOR-LIDGERWOOD-MUNDY CORPORATION** (sued individually and as successor-in-interest to M.T. DAVIDSON COMPANY) is being sued for asbestos-containing M.T. Davidson Pumps.

28.    Defendant **SYD CARPENTER, MARINE CONTRACTOR, INC.** is a California corporation whose registered agent for service of process is Jeremy Milbrodt, Prindle, Amaro, Goetz, Hillyard, Barnes & Reinholtz LLP, 310 Golden Shore Parkway, 4th Floor, Long Beach, CA 90802, and whose offices are located at 9809 Rose Drive, Hesperia, CA 95024.  Defendant **SYD CARPENTER, MARINE CONTRACTOR, INC.** is being sued as a Contractor Defendant and supplier of asbestos-containing insulation products.

29.    Defendant **TACO, INC.** is a Rhode Island corporation whose registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833, and whose offices are located at 1160 Cranston Street, Cranston, RI 02920.  Defendant **TACO, INC.** is being sued for asbestos-containing Taco Pumps.

30.    Defendant **UNION CARBIDE CORPORATION** is a New York corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 7501 State Highway 185 North, Seadrift, TX  77983. Defendant **UNION CARBIDE CORPORATION** is being sued for its mining, milling, sale and supply

of Calidria asbestos fibers.

31.     Defendant **UNISYS CORPORATION** (sued individually and as successor-in-interest to WATERBURY TOOL COMPANY) is a Delaware corporation whose registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833, and whose offices are located at 801 Lakeview Drive, Suite 100, Blue Bell, PA 19422.  Defendant **UNISYS CORPORATION** (sued individually and as successor-in-interest to WATERBURY TOOL COMPANY) is being sued for asbestos-containing Waterbury Pumps.

32.     Defendant **VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION is a Delaware corporation whose registered agent for service of process is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833, and whose offices are located at 94 Avenue C, Williston, VT 05495. Defendant **VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION is being sued for asbestos-containing Velan Valves.

33.     Defendant **VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY) is a Delaware corporation whose registered agent for service of process is CT Corporation System, 330 N. Brand Boulevard, Suite 700, Glendale, CA 91203, and whose offices are located at 1850 N. Central Avenue, Suite 800, Phoenix, AZ 85004-4545.  Defendant **VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY) is being sued for asbestos-containing Griscom-Russell Distilling Plants and Griscom-Russell Fuel Oil Heaters.

34.     Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) is a Delaware limited liability company whose registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, and

whose offices are located at 82 Bridges Avenue, Warren, MA 01083.  The managing member of Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) is Colfax Corporation, a Delaware corporation with its principal place of business in Maryland.  Therefore, Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) is a citizen of the States of Delaware and Maryland.  Defendant **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) is being sued for asbestos-containing Warren Pumps and Quimby Pumps.

35.     Defendant **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL is a Massachusetts corporation whose registered agent for service of process and offices are located at 29 Old Right Road, Ipswich, MA 01938-1119.  Defendant **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL is being sued for asbestos-containing Atwood & Morrill Valves.

36.     Defendant **THE WILLIAM POWELL COMPANY** is an Ohio corporation whose registered agent for service of process, David R. Cowart, and offices are located at 3261 Spring Grove Avenue, Cincinnati, OH 45225.  Defendant **THE WILLIAM POWELL COMPANY** is being sued for asbestos-containing Powell Valves.

### PLAINTIFF KENNETH KRANZ'S EXPOSURE TO ASBESTOS

37.     Plaintiffs contend Plaintiff KENNETH KRANZ was exposed to and inhaled asbestos dust created by the ordinary and intended use of Defendants' raw asbestos fibers of various kinds and grades, and/or asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as "Defendants' Products"), and that his inhalation of such asbestos dust was a substantial factor in causing or contributing to cause his malignant mesothelioma.

38.     Plaintiffs allege that Plaintiff KENNETH KRANZ was exposed to Defendants' Products during his service as a Machinist's Mate in the United States

Navy on the USS Bon Homme Richard (CVA-31) from approximately 1962 to 1965 at various locations including, but not limited to, the San Diego Naval Shipyard in San Diego, California, various missions in the Atlantic Ocean and Pacific Ocean, in Japan, and during a drydock in Puget Sound Naval Shipyard in Bremerton, Washington.  His duties included, but were not limited to, standing watch and working in the engine room, checking the temperature of the bearings in the ship, and performing maintenance and repairs including, but not limited to: repairing, replacing and packing pumps and valves; fabricating and replacing gaskets and packings; and repairing and insulating turbines, generators, diesel engines and oil purifiers. While performing his duties, Plaintiff KENNETH KRANZ was exposed to respirable asbestos released during the ordinary and intended use of the following Defendants' Products both as a result of his own work with Defendants' Products, and as a result of his work in close proximity to other servicemen and tradesmen working with asbestos-containing products and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products.  Upon information and belief, the Products which were designed, manufactured and/or supplied by Defendants which Plaintiff KENNETH KRANZ believes he was exposed during his service in the United States Navy include, but are not limited to, the following:

a.      Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Buffalo Pumps which he contends **AIR & LIQUID SYSTEMS CORPORATION** (sued as successor-by-merger to BUFFALO PUMPS, INC.) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Buffalo Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

b.      Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing DeLaval Purifiers and DeLaval Pumps which he contends **ALFA LAVAL, INC.** (sued individually and as successor-in-interest to THE DELAVAL SEPARATOR COMPANY) is legally responsible.  As a Machinist's Mate, Plaintiff's

work with and around DeLaval Purifiers and DeLaval Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

c.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Armstrong Steam Traps and Armstrong Strainers which he contends **ARMSTRONG INTERNATIONAL, INC.** is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Armstrong Steam Traps and Armstrong Strainers caused the release of respirable asbestos which Plaintiff contends he inhaled. Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

d.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Blackmer Pumps which he contends **BLACKMER PUMP COMPANY** is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Blackmer Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled. Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

e.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Cooper Bessemer Generators, Cooper Bessemer Diesel Engines, and Cooper Bessemer Oil Coolers which he contends **CAMERON INTERNATIONAL CORPORATION** f/k/a COOPER CAMERON CORPORATION (sued individually and as successor-in-interest to THE COOPER-BESSEMER CORPORATION) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Cooper Bessemer Generators, Cooper Bessemer Diesel Engines, and Cooper Bessemer Oil Coolers caused the release of respirable asbestos which Plaintiff contends he inhaled. Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

f.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Cla-Val Valves which he contends **CLA-VAL CO.** is legally responsible.

As a Machinist's Mate, Plaintiff's work with and around Cla-Val Valves caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

g.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Cranite Gaskets, Cranite Packing and Crane Valves which he contends **CRANE CO.** is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Cranite Gaskets, Cranite Packing and Crane Valves caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

h.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Elliott Deaerating Feed Systems and Elliott Condensers which he contends **ELLIOTT COMPANY** f/k/a and d/b/a ELLIOTT TURBOMACHINERY COMPANY is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Elliott Deaerating Feed Systems and Elliott Condensers caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

i.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Edward Valves which he contends **FLOWSERVE US, INC.** (sued as successor to EDWARD VALVE, INC.) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Edward Valves caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

j.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Northern Pumps which he contends **FMC CORPORATION** (sued individually and as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY) is legally responsible.   As a

Machinist's Mate, Plaintiff's work with and around Northern Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled.   Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

k.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Gardner Denver Pumps which he contends **GARDNER DENVER, INC.** is legally responsible.   As a Machinist's Mate, Plaintiff's work with and around Gardner Denver Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled.   Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

l.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing General Electric Ships Service Generators which he contends **GENERAL ELECTRIC COMPANY** is legally responsible.   As a Machinist's Mate, Plaintiff's work with and around General Electric Ships Service Generators caused the release of respirable asbestos which Plaintiff contends he inhaled.   Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

m.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Cranite Gaskets and Cranite Packing which he contends **THE GOODYEAR TIRE & RUBBER COMPANY** is legally responsible.   As a Machinist's Mate, Plaintiff's work with and around Cranite Gaskets and Cranite Packing caused the release of respirable asbestos which Plaintiff contends he inhaled. Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

n.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Marinite Board and Micarta Board which he contends **HOPEMAN BROTHERS INC.** supplied and is legally responsible.   As a Machinist's Mate, Plaintiff's work with and around Marinite Board and Micarta Board caused the release of respirable asbestos which Plaintiff contends he inhaled.   Inhalation of such

respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

o.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Newport News Shipbuilding Condensers which he contends **HUNTINGTON INGALLS INDUSTRIES, INC.** f/k/a NORTHROP GRUMMAN SHIP SYSTEMS (sued individually and as successor-in-interest to NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Newport News Shipbuilding Condensers caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

p.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Newport News Shipbuilding Condensers which he contends **HUNTINGTON INGALLS INCORPORATED** f/k/a NORTHROP GRUMMAN SHIP SYSTEMS (sued individually and as successor-in-interest to NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Newport News Shipbuilding Condensers caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

q.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing DeLaval Pumps, DeLaval Purifiers, C.H. Wheeler Tank Ejectors, and C.H. Wheeler Air Ejectors which he contends **IMO INDUSTRIES, INC.** (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and C. H. WHEELER MANUFACTURING COMPANY) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around DeLaval Pumps, DeLaval Purifiers, C.H. Wheeler Tank Ejectors, and C.H. Wheeler Air Ejectors caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

r.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing John Crane Gaskets and John Crane Packing which he contends **JOHN CRANE, INC.** is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around John Crane Gaskets and John Crane Packing caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

s.     Plaintiff KENNETH KRANZ worked with and/or around contractors and asbestos-containing insulation products which he contends **J.T. THORPE & SON, INC.** is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around contractors employed by and asbestos-containing insulation products sold and/or supplied by **J. T. THORPE & SON, INC.** caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

t.     Defendant **METROPOLITAN LIFE INSURANCE COMPANY** is being sued for intentionally withholding information concerning the hazards of asbestos and for conspiring with Johns Manville to create false studies that gave an inaccurate account of asbestos hazards.  These inaccurate and false studies encouraged industry, including one or more of Defendants named herein, to continue using asbestos in Defendants' Products and to resist the placement of asbestos warnings that would have informed workers and/or servicemen like Plaintiff KENNETH KRANZ to take necessary precautions to protect themselves from respirable asbestos dust.

u.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Westinghouse Pumps, Westinghouse Valves, Westinghouse Turbines, Westinghouse Generators, Westinghouse Ships Service Generators, Westinghouse Reduction Gears, Westinghouse Air Ejectors, Westinghouse Condensers, Westinghouse Coolers, BF Sturtevant Pumps, BF Sturtevant Turbines, and BF Sturtevant Forced Draft Blowers which he contends **PARAMOUNT GLOBAL f**/k/a VIACOMCBS INC. f/k/a CBS CORPORATION f/k/a VIACOM, INC. successor-by-

merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION and as successor-in-interest to BF STURTEVANT) is legally responsible. As a Machinist's Mate, Plaintiff's work with and around Westinghouse Pumps, Westinghouse Valves, Westinghouse Turbines, Westinghouse Generators, Westinghouse Ships Service Generators, Westinghouse Reduction Gears, Westinghouse Air Ejectors, Westinghouse Condensers, Westinghouse Coolers, BF Sturtevant Pumps, BF Sturtevant Turbines, and BF Sturtevant Forced Draft Blowers caused the release of respirable asbestos which Plaintiff contends he inhaled. Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

v.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing M.T. Davidson Pumps which he contends **SUPERIOR-LIDGERWOOD-MUNDY CORPORATION** (sued individually and as successor-in-interest to M.T. DAVIDSON COMPANY) is legally responsible. As a Machinist's Mate, Plaintiff's work with and around M.T. Davidson Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled. Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

w.     Plaintiff KENNETH KRANZ worked with and/or around contractors and asbestos-containing insulation products which he contends **SYD CARPENTER, MARINE CONTRACTOR, INC.** is legally responsible. As a Machinist's Mate, Plaintiff's work with and around contractors employed by and asbestos-containing insulation products sold and/or supplied by **SYD CARPENTER, MARINE CONTRACTOR, INC.** caused the release of respirable asbestos which Plaintiff contends he inhaled. Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

x.     Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Taco Pumps which he contends **TACO, INC.** is legally responsible. As a Machinist's Mate, Plaintiff's work with and around Taco Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled. Inhalation of such respirable

asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

y.    Plaintiff KENNETH KRANZ worked with and/or around Defendants' Products that contained raw asbestos fibers supplied by **UNION CARBIDE CORPORATION**.  Such work required sanding, grinding, abrasion, removal, and cleanup that created asbestos dust that Plaintiff inhaled.  Inhalation of such respirable asbestos dust, which contained the asbestos fibers supplied by **UNION CARBIDE CORPORATION**, was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

z.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Waterbury Pumps which he contends **UNISYS CORPORATION** (sued individually and as successor-in-interest to WATERBURY TOOL COMPANY) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Waterbury Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

aa.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Velan Valves which he contends **VELAN VALVE CORP.** a/k/a VELAN VALVE CORPORATION is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Velan Valves caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

bb.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Griscom-Russell Distilling Plants and Griscom-Russell Fuel Oil Heaters which he contends **VIAD CORP** f/k/a VIAD CORPORATION f/k/a THE DIAL CORPORATION (sued individually and as successor-in-interest to GRISCOM-RUSSELL COMPANY) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Griscom-Russell Distilling Plants and Griscom-Russell Fuel Oil Heaters caused the release of respirable asbestos which Plaintiff contends he inhaled.

Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

cc.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Warren Pumps and Quimby Pumps which he contends **WARREN PUMPS, LLC** (sued individually and as successor-in-interest to QUIMBY PUMP COMPANY) is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Warren Pumps and Quimby Pumps caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

dd.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Atwood & Morrill Valves which he contends **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Atwood & Morrill Valves caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

ee.    Plaintiff KENNETH KRANZ worked with and/or around asbestos-containing Powell Valves which he contends **THE WILLIAM POWELL COMPANY** is legally responsible.  As a Machinist's Mate, Plaintiff's work with and around Powell Valves caused the release of respirable asbestos which Plaintiff contends he inhaled.  Inhalation of such respirable asbestos dust was a substantial factor in causing Plaintiff KENNETH KRANZ's mesothelioma.

39.    At all times herein set forth, Defendants' Products were being employed in the manner and for the purposes for which they were intended.

40.    Plaintiff's exposure to and inhalation, ingestion or absorption of asbestos fibers emanating from the use of the Defendants' Products was completely foreseeable and could or should have been anticipated by the Defendants.

41.    The Defendants knew or should have known that the asbestos fibers contained in Defendants' Products had a toxic, poisonous, and highly deleterious effect

upon the health of persons inhaling or otherwise absorbing them.

42.     Plaintiff KENNETH KRANZ was first diagnosed with mesothelioma on approximately February 23, 2022, and subsequently thereto became aware that the same was wrongfully caused.  As a result of developing mesothelioma, Plaintiff has since endured great physical pain and suffering, mental anguish, emotional pain and suffering, and loss of enjoyment of life.  As a result of Defendants' wrongful conduct, Plaintiff was required to receive medical treatment to mitigate his asbestos-related mesothelioma, incurring reasonable and necessary costs for his medical care, diagnosis and treatment.  Further, as a result of Defendants' wrongful conduct, Plaintiffs have incurred a substantial loss of income.

43.     As a result of Defendants' wrongful conduct which caused Plaintiff KENNETH KRANZ's asbestos-related mesothelioma, his spouse, Plaintiff LUCINDA KRANZ, has suffered, and will continue to suffer, a loss of society, as well as related mental anguish and grief.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

## AGAINST ALL DEFENDANTS EXCEPT METROPOLITAN LIFE INSURANCE COMPANY

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

44.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

45.     At all times herein mentioned, each of the named Defendants and DOES 1 through 450 were the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying,

offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising Defendants' Products including, but not limited to, those Products previously identified in paragraph 38.  Said entities shall hereinafter collectively be called "alternate entities."  Each of the herein named Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketed, warranted, re-branded, manufactured for others and advertised Defendants' Products. The following Defendants, and each of them, are liable for the acts of each and every "alternate entity" and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity;" Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity;" each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| AIR AND LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| ALFA LAVAL, INC. | THE DELAVAL SEPARATOR COMPANY<br>SHARPLES, INC.<br>ALFA-LAVAL SEPARATION, INC. |
| CAMERON INTERNATIONAL CORPORATION | COOPER CAMERON<br>COOPER BESSEMER CORPORATION<br>JOY MANUFACTURING COMPANY<br>COOPER TURBOCOMPRESSOR INC. |

| | |
|---|---|
| CRANE CO. | CRANE ENVIRONMENTAL |
| | CRANE PUMPS AND SYSTEMS |
| | VALVE SERVICES |
| | CRANE VALVE GROUP |
| | CRANE SUPPLY |
| | CHAPMAN VALVE CO. |
| | DEMING PUMPS |
| | JENKINS VALVES |
| | COCHRANE FEED TANKS |
| | COCHRANE DIVISION |
| | COCHRANE CORPORATION |
| | CHEMPUMP |
| | THE SWARWOUT COMPANY |
| | NATIONAL-US RADIATOR |
| ELLIOTT COMPANY COMPANY | ELLIOTT TURBOMACHINERY |
| FLOWSERVE US, INC. | WILSON SNYDER PUMPS |
| | EDWARD VALVE, INC. |
| | VOGT VALVES |
| | BW/IP INTERNATIONAL, INC. |
| | BYRON JACKSON PUMP COMPANY |
| | KAMMER VALVE |
| FMC CORPORATION | PEERLESS PUMP COMPANY |
| | McNALLY INDUSTRIES |
| | NORTHERN PUMP |
| | FMC AGRICULTURAL PRODUCTS |
| | FMC BIOPOLYMER |
| | FMC LITHIUM |
| | FMC ALKALI CHEMICALS |
| | FMC FORET |
| | NORTHERN PUMP COMPANY |
| | NORTHERN FIRE APPARATUS COMPANY |
| | CHICAGO PUMP COMPANY |
| | CROSBY VALVE, INC. |
| GARDNER DENVER, INC. | GARDNER GOVERNOR CORPORATION |
| | GARDNER COMPANY |
| | GARDNER DENVER INDUSTRIAL MACHINERY |
| | COOPER INDUSTRIES, INC. |

| | |
|---|---|
| | SYLTONE PLC |
| | TAMROTOR |
| | GEOQUIP |
| | CHAMPION PNEUMATIC MACHINERY |
| | WITTIG |
| | ALLEN-STUART EQUIPMENT COMPANY |
| | AIR RELIEF |
| | BUTTERWORTH JETTING SYSTEMS |
| | INVINCIBLE AIRFLOW SYSTEMS |
| | HAMWORTHY BELISS & MORCOM |
| | HOFFMAN AIR AND FILTRATION SYSTEMS |
| | JOY MANUFACTURING COMPANY |
| GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY, INC. |
| | GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY |
| | GENERAL ELECTRIC PROFESSIONAL SERVICES COMPANY |
| | GENERAL ELECTRIC TRADING COMPANY |
| | CROWN COACH CORPORATION |
| GOODYEAR TIRE & RUBBER COMPANY | DUNLOP |
| | KELLY TIRES |
| | $AVA |
| | FULDA |
| | US INDUSTRIES SUPPLY |
| | DURABLA GASKETS |
| HOPEMAN BROTHERS INC. | HOPEMAN BROTHERS MARINE INTERIORS |
| HUNTINGTON INGALLS INDUSTRIES, INC. | NORTHROP GRUMMAN SHIP SYSTEMS |
| | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
| HUNTINGTON INGALLS INCORPORATED | NORTHROP GRUMMAN SHIP SYSTEMS |
| | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
| IMO INDUSTRIES, INC. | DELAVAL TURBINE INC. |
| | WARREN PUMPS, INC. |
| | COLFAX CORPORATION |
| | IMO PUMP |
| | IMO AB |
| | COLFAX PUMP GROUP |

| | |
|---|---|
| | ALLWEILER |
| | HOUTTUIN |
| | C. H. WHEELER |
| | C. H. WHEELER MANUFACTURING COMPANY |
| | ADEL FASTENERS AND WIGGINS CONNECTORS |
| JOHN CRANE, INC. | JOHN CRANE-HOUDAILLE, INC. |
| | HOUDAILLE JOHN CRANE, INC. |
| PARAMOUNT GLOBAL | VIACOMCBS INC. |
| | CBS CORPORATION |
| | VIACOM INC. |
| | WESTINGHOUSE ELECTRIC CORPORATION |
| | BF STURTEVANT |
| | VIACOM INTERNATIONAL, INC. |
| | VIACOM PLUS |
| SUPERIOR-LIDGERWOOD-MUNDY CORPORATION | M.T. DAVIDSON COMPANY |
| UNION CARBIDE CORPORATION | THE DOW CHEMICAL COMPANY |
| | UNION CARBIDE CHEMICALS AND PLASTICS COMPANY, INC. |
| | UNION CARBIDE AND CARBON CORPORATION |
| | LINDE AIR PRODUCTS COMPANY |
| | NATIONAL CARBON CO., INC. |
| | PREST-O-LITE CO., INC. |
| | UNION CARBIDE COMPANY |
| | CARBIDE AND CARBON CHEMICALS CORPORATION |
| | BAKELITE CORPORATION |
| | UNION CARBIDE CONSUMER PRODUCTS CO. |
| | UNION CARBIDE MINING AND METALS DIVISION |
| | UNION CARBIDE ELECTRONICS DIVISION |
| | UNION CARBIDE HYDROCARBONS DIVISION |
| | UNION CARBIDE FERROALLOYS DIVISION |

| | JENNAT CORPORATION |
| | AMERCHOL CORPORATION |
| | UOP |
| | UCAR CARBON COMPANY |
| | UNION CARBIDE INDUSTRIAL GASES INC. |
| | PRAXAIR, INC. |
| | POLIMERI EUROPA S.r.l. |
| | ASIAN ACETYLS COMPANY, LTD. |
| | EQUATE PETROCHEMICAL COMPANY |
| UNISYS CORPORATION | WATERBURY TOOL COMPANY |
| VELAN VALVE CORP. | VELAN VALVE CORPORATION |
| VIAD CORPORATION | THE DIAL CORPORATION |
| | GRISCOM-RUSSELL COMPANY |
| WARREN PUMPS LLC | WARREN PUMPS INC. |
| | WARREN PUMPS-HOUDAILLE, INC. |
| | COLFAX PUMP GROUP |
| | ALWEILER AG |
| | HOUTTUIN BV |
| | IMO PUMP |
| | ZENITH PUMPS |
| | QUIMBY PUMP CO. |
| WEIR VALVE & CONTROLS USA, INC. | ATWOOD & MORRILL |
| THE WILLIAM POWELL COMPANY | POWELL VALVES |
| | HOPHOLD A & M, INC. |

46.     At all times herein mentioned, Defendants, their "alternate entities," and each of them were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising Defendants' Products.

47.     At all times herein mentioned, Defendants, their "alternate entities," and each of them singularly and jointly, negligently and carelessly researched,

manufactured, fabricated, specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to recall and/or retrofit, labeled, assembled, distributed, leased, bought, rented, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products including, but not limited to, those Products identified in paragraph 38 above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, household members, and others, including Plaintiff KENNETH KRANZ herein.  Defendants' Products were used at all times in a manner that was reasonably foreseeable to Defendants, their "alternate entities," and each of them, thereby rendering Defendants' Products unsafe and dangerous for use by "exposed persons."  Plaintiffs herein allege that Plaintiff KENNETH KRANZ's exposures to Defendants' Products including, but not limited to, those products identified in paragraph 38 above, were a substantial contributing factor in the development of his mesothelioma and therefore proximately caused Plaintiff's illnesses, injuries, disabilities, and damages.

48.     Defendants, their "alternate entities," and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and each Defendant breached said duty of reasonable care in that Defendants, and each of them failed to safely and adequately design, manufacture and/or sell Defendants' Products; failed to test Defendants' Products; failed to investigate the hazards of Defendants' Products; failed to warn "exposed persons" including Plaintiff KENNETH KRANZ, of the health hazards of working with and using Defendants' Products; failed to disclose the known or knowable dangers of working with and using Defendants' Products; failed to warn of the harmful exposures caused by use of Defendants' Products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein.

49.     Defendants' Products were and are hazardous to the health and

safety of Plaintiff, and others in Plaintiff's position working with, manipulating, and in close proximity to Defendants' Products, and since on or before 1930, the hazards and dangerous propensities of Defendants' Products were both known and knowable to the Defendants, their "alternate entities," and each of them, through the use of medical and/or scientific data and other knowledge available to Defendants, their "alternate entities," and each of them, at the time of Defendants' manufacture, distribution, sale, research, study, fabrication, design, modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for others, packaging and advertising of Defendants' Products which clearly indicated the hazards and dangerous propensities of asbestos presented a substantial danger to workers, users, handlers, and bystanders, including Plaintiff KENNETH KRANZ, of Defendants' Products through the intended and reasonably foreseeable use of Defendants' Products.

50.     Defendants, their "alternate entities," and each of them knew, or reasonably should have known, that Defendants' Products were dangerous and were likely to be dangerous when used in their intended and reasonably foreseeable manner.

51.     Defendants, their "alternate entities," and each of them knew, or reasonably should have known, that Defendants' Products would be used, worked with, swept, handled, applied, and/or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through such activity, "exposed persons" including Plaintiff KENNETH KRANZ herein, would be exposed to hazardous and dangerous asbestos fibers. Defendants, their "alternate entities," and each of them knew or reasonably should have known that workers, users, and bystanders such as Plaintiff KENNETH KRANZ, and others in his position working with, manipulating, and in close proximity to or otherwise exposed to dust from Defendants' Products, would not realize or know the dangers. Defendants, their "alternate entities," and each of them negligently failed to adequately warn or instruct of the dangers of Defendants' Products and failed to recall and/or retrofit Defendants' Products. A reasonable designer, manufacturer,

distributor, seller, installer, buyer or supplier, under the same or similar circumstances, would have warned of the dangers to avoid exposing others to a foreseeable risk of harm.  The negligent failure of Defendants, their "alternate entities," and each of them, to warn was a substantial factor in causing harm to Plaintiff KENNETH KRANZ.

52.    Plaintiff KENNETH KRANZ worked with, handled, applied, or was otherwise exposed to asbestos from Defendants' Products referred to herein in a manner that was reasonably foreseeable to Defendants, and each of them.

53.    As a direct and proximate result of the conduct of the Defendants, their "alternate entities," and each of them as aforesaid, Plaintiff KENNETH KRANZ's exposure to asbestos from working with and around others working with Defendant's Products caused severe and permanent injury to the Plaintiff.  Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said diseases result from exposure to Defendants' Products over a period of time.

54.    Plaintiff KENNETH KRANZ suffers from malignant mesothelioma caused by exposure to asbestos from Defendants' Products and/or from the use of Defendants' Products including those products identified in paragraph 38 above. Plaintiff was not aware at the time of his exposures that Defendants' Products presented any risk of injury and/or disease.

55.    As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Plaintiff KENNETH KRANZ has suffered and will continue to suffer pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and emotional distress attendant thereto, as Plaintiff's malignant mesothelioma progresses, all to his general damage in a sum in excess of the jurisdictional limits of a limited civil case.

56.    As a direct result and proximate result of the aforesaid conduct of the Defendants, their "alternate entities," and each of them, Plaintiff KENNETH KRANZ has incurred, is presently incurring, and will incur in the future liability for physicians,

surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

57.    As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities," and each of them, Plaintiffs have incurred and will incur of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

58.    Plaintiffs further allege that Defendants, their "alternate entities," and each of them also engaged in the following wrongful acts which support Plaintiffs' prayer for punitive damages:

a.    Defendants, their "alternate entities," and each of them suppressed from all workers, users, handlers, and bystanders, including Plaintiff KENNETH KRANZ, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom. Although Defendants, and each of them knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information of Defendants' Products from workers, users, handlers, and bystanders in conscious disregard of the rights, safety and welfare of "exposed persons" including Plaintiff KENNETH KRANZ;

b.    Defendants, their "alternate entities," and each of them belonged to, participated in, and financially supported industry organizations including, but not limited to, the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which for and on behalf of Defendants, their "alternate entities," and each of them actively promoted the suppression of information about the dangers of asbestos to workers, users, handlers, and bystanders of Defendants' Products, thereby misleading Plaintiff KENNETH KRANZ as to the safety of Defendants' Products.  Through their participation and association with such industry organizations, Defendants and each of them knowingly and deliberately concealed and

suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in workers, users and handlers of Defendants' Products a false security about the safety of Defendants' Products. The Dust Control Committee, which changed its name to the Air Hygiene Committee of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

c. Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities," and each of them knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities," and each of them herein. Between 1942 and 1950, the Defendants, their "alternate entities," and each of them failed to provide this information to workers, users, handlers, and/or bystanders;

d. Defendants, their "alternate entities," and each of them failed to warn Plaintiff KENNETH KRANZ and others of the nature of Defendants' Products which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities," and each of them possessed knowledge and were under a duty to disclose that Defendants' Products were dangerous and a threat to the health of persons coming into contact therewith;

e. Defendants, their "alternate entities," and each of them, failed to provide Plaintiff KENNETH KRANZ with information concerning adequate protective masks and other equipment devised to be used when working with and maniputlating

Defendants' Products, and/or from the use of Defendants' Products, their "alternate entities," and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that Defendants' Products were dangerous and would result in injury to Plaintiff KENNETH KRANZ and others working with, using and manipulating Defendants' Products;

f.    Defendants, their "alternate entities," and each of them knew and failed to disclose that Plaintiff KENNETH KRANZ and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

g.    Defendants, their "alternate entities," and each of them failed to provide information of the true nature of the hazards of Defendants' Products and that exposure to Defendants' Products would cause pathological effects without noticeable trauma to the public, including physicians employed by Plaintiff KENNETH KRANZ, so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities," and each of them were under a duty to so inform and said failure was misleading.

59.    Defendants, their "alternate entities," and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.  Defendants, their "alternate entities," and each of them are liable for the oppressive and malicious acts of their "alternate entities," and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of or should have known of the acts of each of their "alternate entities" as set forth herein.

60.    The herein-described conduct of said Defendants, their "alternate entities," and each of them was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons," including Plaintiff KENNETH KRANZ, in that Defendants and each of them continued to manufacture, market and/or sell dangerous Defendants' Products known

to cause asbestos to be released and to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by the use of Defendants' Products in order to continue to profit financially therefrom. Defendants, their "alternate entities," and each of them engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code Section 3294. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

61.   Defendants, and each of them engaged in conduct which was intended by Defendants to cause injury to the Plaintiffs, and despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiff KENNETH KRANZ.

62.   Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiff KENNETH KRANZ, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

63.   As a result of developing mesothelioma, Plaintiff KENNETH KRANZ has endured great physical pain and suffering, mental anguish, emotional pain and suffering, and loss of enjoyment of life. As a result of Defendants' wrongful conduct, Plaintiff was required to receive medical treatment to mitigate his asbestos-related mesothelioma, incurring reasonable and necessary costs for his medical care, diagnosis and treatment. Further, as a result of Defendants' wrongful conduct, Plaintiffs have incurred a substantial loss of income.

64.   As a result of Defendants' wrongful conduct which caused Plaintiff KENNETH KRANZ's asbestos-related mesothelioma, his spouse, Plaintiff LUCINDA KRANZ, has suffered, and will continue to suffer, a loss of society, as well as related mental anguish and grief.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate

entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

## STRICT LIABILITY

## AGAINST ALL DEFENDANTS EXCEPT METROPOLITAN LIFE INSURANCE COMPANY

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

65.     Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

66.     **Strict Liability - Manufacturing Defect**:  All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under manufacturing defect. Defendants and Does manufactured, sold, supplied, designed, or distributed Defendants' Products.  The defects existed in all of Defendants' Products when they left the possession of the Defendants, their "alternate entities," and each of them.  These defects were a substantial factor in causing harm to Plaintiff KENNETH KRANZ.

67.     **Strict Liability - Design Defect - Consumer Expectations**: All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under the consumer-expectations test for placing defectively designed products into the stream of commerce and ultimately exposing Plaintiff KENNETH KRANZ to asbestos from Defendants' Products.  First, Defendants designed, manufactured, supplied, marketed, distributed, and sold Defendants' Products.  Second, each Product did not perform as safely as an ordinary worker and/or consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, because each Product caused hazardous asbestos to become airborne thereby exposing Plaintiff to asbestos. Third, Plaintiff developed mesothelioma.  Fourth, each Product's failure to perform safely was a substantial factor in causing Plaintiff's mesothelioma.

68.     **Strict Liability – Design Defect – Risk/Benefit**:  All Defendants, and the 1st through 450th Doe Defendants, are strictly liable under risk/benefit.  Defendants, their alternate entities and Does manufactured, sold, supplied, designed, or distributed Defendants' Products.  These defects were a substantial factor in causing harm to the Plaintiff.

69.     **Strict Liability – Failure to Warn**: Defendants, their "alternate entities," and each of them sold Defendants' Products, which were defective in that they failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of Defendants' Products, which dangers and risks would not have been and were not recognized by ordinary workers and users of the Products, including Plaintiff KENNETH KRANZ, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiff KENNETH KRANZ and others in Plaintiff's position who were working with and in close proximity to Defendants' Products.

70.     Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that when worked with, used, handled, swept, or otherwise disturbed, Defendants' Products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos fibers by exposed persons, including Plaintiff KENNETH KRANZ.  These defects existed in all of Defendants' Products when they left the possession of the Defendants, their "alternate entities," and each of them.  At the time Defendants' Products were used by Plaintiff KENNETH KRANZ and others in his position working with, manipulating, and in close proximity to or otherwise exposed to dust from Defendants' Products, Defendants' Products were substantially the same as when they left the possession of the Defendants, their "alternate entities," and each of them, and/or any changes made to Defendants' Products after they left the possession of Defendants, their "alternate entities," and each of them were reasonably foreseeable to Defendants, their "alternate entities," and each of them.  Defendants' Products were used by Plaintiff KENNETH KRANZ and others in his position working with, manipulating, and in close proximity to or otherwise

exposed to dust from Defendants' Products in a way that was reasonably foreseeable to Defendants and each of them. The defect in Defendants' Products was a substantial factor in causing harm and personal injuries to Plaintiff KENNETH KRANZ, including malignant mesothelioma, while being used in a reasonably foreseeable manner, thereby rendering Defendants' Products defective, unsafe, and unreasonably dangerous for their ordinary and intended use.

71. As a result of developing mesothelioma, Plaintiff KENNETH KRANZ has endured great physical pain and suffering, mental anguish, emotional pain and suffering, and loss of enjoyment of life. As a result of Defendants' wrongful conduct, Plaintiff was required to receive medical treatment to mitigate his asbestos-related mesothelioma, incurring reasonable and necessary costs for his medical care, diagnosis and treatment. Further, as a result of Defendants' wrongful conduct, Plaintiffs have incurred a substantial loss of income.

72. As a result of Defendants' wrongful conduct which caused Plaintiff KENNETH KRANZ's asbestos-related mesothelioma, his spouse, Plaintiff LUCINDA KRANZ, has suffered, and will continue to suffer, a loss of society, as well as related mental anguish and grief.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

## BREACH OF WARRANTY

## AGAINST ALL DEFENDANTS EXCEPT
## METROPOLITAN LIFE INSURANCE COMPANY

AS AND FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

73. Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First and Second Causes of Action herein.

74.    Defendants caused Plaintiffs' injuries and damages as stated above by manufacturing, selling, installing, and distributing Defendants' Products which failed to meet express and implied warranties of merchantability and fitness for intended purposes upon which Plaintiff KENNETH KRANZ had a right to rely and did rely.

75.    As a result of developing mesothelioma, Plaintiff KENNETH KRANZ has endured great physical pain and suffering, mental anguish, emotional pain and suffering, and loss of enjoyment of life.  As a result of Defendants' wrongful conduct, Plaintiff was required to receive medical treatment to mitigate his asbestos-related mesothelioma, incurring reasonable and necessary costs for his medical care, diagnosis and treatment.  Further, as a result of Defendants' wrongful conduct, Plaintiffs have incurred a substantial loss of income.

76.    As a result of Defendants' wrongful conduct which caused Plaintiff KENNETH KRANZ's asbestos-related mesothelioma, his spouse, Plaintiff LUCINDA KRANZ, has suffered, and will continue to suffer, a loss of society, as well as related mental anguish and grief.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION
## CONSPIRACY AGAINST METROPOLITAN LIFE INSURANCE COMPANY

AS AND FOR A FURTHER FOURTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR CONSPIRACY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

77.    Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products to which Plaintiff KENNETH KRANZ was exposed, and such assistance by METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products by such manufacturers which proximately caused Plaintiff's illnesses, injuries, disabilities and

damages alleged herein.

78.     METROPOLITAN LIFE INSURANCE COMPANY, prior to and during all relevant times associated with Plaintiff KENNETH KRANZ's exposure to asbestos (1962 to 1965), intentionally withheld information concerning asbestos hazards and conspired with non-party Johns Manville, a major asbestos product manufacturer and supplier, to create studies that gave an inaccurate account of asbestos hazards.  In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos. METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate, and deceptive information about the health effects of asbestos exposure.

79.     Plaintiff KENNETH KRANZ unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

80.     As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff KENNETH KRANZ from asbestos exposure was increased, and (ii) Plaintiff suffered the illnesses, injuries, disabilities and damages alleged herein.

81.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiff KENNETH KRANZ.

## FIFTH CAUSE OF ACTION
### LOSS OF CONSORTIUM

AS AND FOR A FURTHER FIFTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF LUCINDA KRANZ COMPLAINS OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES," AND each of them, AND ALLEGES AS FOLLOWS:

82.    Plaintiff LUCINDA KRANZ incorporates by reference each and every allegation contained in the general allegations and in the First, Second, Third, and Fourth Causes of Action herein.

83.    Plaintiffs KENNETH KRANZ and LUCINDA KRANZ were married July 9, 1966, and at all times relevant to this action were and are now husband and wife.

84.    Prior to Plaintiff KENNETH KRANZ's illnesses, injuries, and disabilities as herein alleged, he was able and did perform duties as a spouse.  Subsequent to the illnesses, injuries, and disabilities and as a proximate result thereof, Plaintiff KENNETH KRANZ has been unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service and duties in the future.  As a proximate result thereof, Plaintiff LUCINDA KRANZ has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

85.    Plaintiff LUCINDA KRANZ's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

86.    As a direct and proximate result of the acts of Defendants, their "alternate entities" and each of them, and the severe illnesses, injuries, and disabilities caused thereby to Plaintiff KENNETH KRANZ as set forth in this Complaint, Plaintiff LUCINDA KRANZ has suffered, and for a long period of time will continue to suffer loss of consortium including, but not limited to, loss of services, marital relations,

society, comfort, companionship, love and affection of her spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

### **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs request that the Court enter an order or judgment against the Defendants as follows:

Plaintiff KENNETH KRANZ:

1.      For Plaintiff's general damages according to proof;

2.      For Plaintiff's loss of income, wages, and earning potential according to proof;

3.      For Plaintiff's medical and related expenses according to proof;

4.      For Plaintiff's cost of suit herein;

5.      For exemplary or punitive damages according to proof;

Plaintiff LUCINDA KRANZ:

6.      For Plaintiff's damages for loss of consortium and/or society according to proof;

Plaintiffs KENNETH KRANZ and LUCINDA KRANZ:

7.      For Plaintiffs' cost of suit herein;

8.      For exemplary or punitive damages according to proof;

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE**


DATED:  April 26, 2022          Respectfully submitted,

**SIMON GREENSTONE PANATIER, PC**

By:  _____

Stuart Purdy